UNITED STATES of America,
Plaintiff–Appellee,

v.

Balbino DeJesus TAVAREZ, a/k/a
Munchie, Defendant–
Appellant.

No. 94–6048.

United States Court of Appeals,
Tenth Circuit.

Nov. 22, 1994.

Joseph Luis Ruffin, Oklahoma City, OK, for defendant-appellant.

Vicki Miles–LaGrange, U.S. Atty., and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before TACHA and KELLY, Circuit Judges, and VRATIL,\* District Judge.

TACHA, Circuit Judge.

## I. Background

On June 2, 1993, defendant Balbino DeJesus Tavarez (a.k.a. "Munchie") was indicted for one count of conspiracy to possess with intent to distribute methamphetamine and cocaine in violation of 21 U.S.C. § 841(a)(1). The government's only evidence against defendant consisted of taped telephone conversations between defendant and several codefendants. This evidence was obtained by a court-ordered wiretap of a codefendant's telephone. After the district court denied defendant's motion to suppress the wiretap evidence, defendant pleaded guilty to conspiracy. Defendant reserved his right to appeal the denial of the motion to suppress evidence, and this appeal followed. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## II. Discussion

Defendant contends that both the Application for Order Authorizing the Interception of Wire Communications (the "application") and the Order Authorizing the Interception of Wire Communications (the "order") were facially invalid and that all evidence obtained pursuant to the order should be suppressed. Defendant alleges two infirmities with the application and order: (1) the application was requested by a district attorney who lacked jurisdiction to do so; and (2) both the application and order were deficient in their descriptions of the locations of the wiretaps.

The order was obtained pursuant to the Oklahoma Security of Communications Act (the "Oklahoma Act"), Okla.Stat.Ann. tit. 13, §§ 176.1 through .14 (West 1994). The federal wiretap statute, 18 U.S.C. § 2516(2), requires federal courts to defer to state law "on the question of the validity of [a] wiretap order obtained in state court under state law." *United States v. McNulty*, 729 F.2d 1243, 1266 (10th Cir.1983) (en banc). We review a district court's determination of state law de novo. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 495 (10th Cir. 1992) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

### A. Authority of District Attorney McCoy to Apply for Order

Defendant first contends that the application and order were invalid because the district attorney who applied for the wiretap order lacked jurisdiction to do so. Because an order must conform to all provisions of the Oklahoma Act, an improper application results in an invalid order. *See* Okla.Stat.Ann. tit. 13, § 176.7 (West 1994).

The Oklahoma Act establishes a two-step application process for wiretap orders. *Id.* First, the district attorney for the jurisdiction in which the interception will take place must file an application with the state's attorney general. The attorney general then applies for an order from the presiding judge of the Oklahoma Court of Criminal Appeals. *Id.;* see also § 176.2(9) (defining a "judge of competent jurisdiction" as the presiding judge of the Court of Criminal Appeals). Upon the submission of an application by the attorney general, the presiding judge may issue an order "authorizing interception of wire ... communications within the territorial jurisdiction of the judicial district of the district attorney requesting the order." § 176.9(C).

---

\* The Honorable Kathryn H. Vratil, District Judge, United States District Court for the District of Kansas, sitting by designation.

The application in the instant case sought authorization to intercept the communications from two specific telephone numbers. The application identified the same Atoka County, Oklahoma address for both telephone numbers. Atoka County is within the territorial jurisdiction of Oklahoma Judicial District 19. The district attorney for Oklahoma Judicial District 21, J. Tully McCoy, applied for the order. District 21 includes Cleveland County, the county in which law enforcement officers listened to the conversations.

Because the tapped telephones were physically located in District 19, defendant argues that the district attorney for District 21 did not have authority to apply for the order. Defendant further contends that, without such authority, the wiretap order was invalid and the district court should have suppressed all evidence obtained from the taps. *See* § 176.6.

Defendant's argument is contradicted by the language of the Oklahoma Act. Section 176.9(C) authorizes the "interception of wire . . . communications within the territorial jurisdiction . . . of the district attorney requesting the order." The Oklahoma Act defines "intercept" as "the aural acquisition of the contents of any wire . . . communication through the use of any electronic, mechanical or other device." § 176.2(8). " 'Aural acquisition' means obtaining knowledge of a communication through the sense of hearing which is contemporaneous with the communication." § 176.2(2). Thus, the statutory definition of "interception" includes the place where the contents of the communication are first heard by law enforcement officials; that is, where officials aurally acquire knowledge of the communication.

Although courts have not previously interpreted this provision of the Oklahoma Act, we note that our interpretation is in accordance with federal court interpretations of the similarly worded federal statute, 18 U.S.C. § 2518(3). Section 2518(3) authorizes a federal judge to approve the interception of wire communications "within the territorial jurisdiction of the court in which the judge is sitting." The Second Circuit has held that "for purposes of § 2518(3)'s jurisdictional requirement, a communication is intercepted not only where the tapped telephone is located, but also where the contents of the redirected communication are first to be heard." *United States v. Rodriguez,* 968 F.2d 130, 136 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992); *accord United States v. Burford,* 755 F.Supp. 607, 611 (S.D.N.Y.1991) ("Jurisdiction vests either in the location where the conversations are actually heard or where the mechanical device is inserted.").[1]

We hold that the location of an "interception" for purposes of section 176.9(C) includes the place where the intercepted communication is heard.[2]

*B. Sufficiency of Description of Location in Application and Order*

Defendant also argues that both the application and the order were facially invalid because neither included a particular description of the nature and location of the facilities from which the wire communications were to be intercepted. We first address the adequacy of the description in the application, and then examine the adequacy of the order.

■ An application for an order authorizing the interception of a wire communication must include "a particular description of the nature and location of the facilities from

---

**1.** Although defendant argues that *United States v. Nelson,* 837 F.2d 1519 (11th Cir.), *cert. denied,* 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988), supports his contention that an interception occurs only at the location of the tapped telephone, *Nelson's* narrow holding does not advance his argument. The defendant in *Nelson* argued that a communication is intercepted *only* in the place where the communication is listened to—the reverse of defendant's argument in the case at bar. In its decision finding the wiretap order valid, the Eleventh Circuit held that "the term 'intercept' as it relates to 'aural acquisi-

tions' refers to the place where a communication is initially obtained regardless of where the communication is ultimately heard." *Id.* at 1527. Thus, while *Nelson* holds that an interception occurs where the telephone is tapped, it does not exclude from the definition of "intercept" the place where the communication is heard.

**2.** Because it is unnecessary to the disposition of this case, we do not address whether the location of an "interception" also includes the location of the target telephone.

which, or the place where the wire ... communications are to be intercepted." Okla. Stat.Ann. tit. 13, § 176.9(A)(2)(b) (West 1994). The district court noted in its order denying defendant's motion that this statutory provision is worded in the disjunctive; thus, the application needed to specify the location of *either* "the facilities from which" *or* "the place where" the communications would be intercepted. Although the term "facilities" is not defined in the statute, we agree with the district court that usage of the term in other provisions of the Oklahoma Act indicates that "facilities" means the target telephones. *See* § 176.9(C)(4) ("the facilities from which ... the wire ... communications are to be intercepted[ ] are being used by an individual or are about to be used in connection with the commission of [an] offense").

The application here requested authorization to intercept the wire communications of telephone instruments located at "Route 4, Box 175, Atoka, Oklahoma." This is a sufficiently particular description of the nature and location of the target telephones, thereby fulfilling the requirements of section 176.9(A)(2)(b).

■ Defendant's argument that the order lacks particularly also fails. Like section 176.9(A)(2)(b), section 176.9(D)(2)'s requirements are worded disjunctively. The order must specify "[t]he nature and location of the communications facilities as to which, or the place where, authority to intercept is granted." § 176.9(D)(2). Again, "facilities" is used elsewhere in the Oklahoma Act to mean the targeted telephones. The order issued here authorized interception of wire communications "which occur on telephone(s) operating with [specific telephone numbers] located at Route 4, Box 175, Atoka, Oklahoma." Because the targeted telephones were specified in the order, the order complied with section 176.9(D)(2).

### Conclusion

The district court's order denying defendant's motion to suppress evidence is **AFFIRMED.**